IN THE SUPREME COURT OF IOWA

 No. 16 / 04-0848

 Filed March 24, 2006

IN THE MATTER OF THE ESTATE OF MARY H. SEROVY, Deceased.

ALLAN J. SEROVY and PEARL M. SEROVY,

 Appellants.

 Appeal from the Iowa District Court for Johnson County, Amanda P.
Potterfield, Judge.

 Surviving joint tenants of real estate appeal from orders of the
probate court subjecting the interests of a deceased joint tenant to a
claim for the cost of medical assistance provided to her as a Medicaid
recipient. AFFIRMED AS MODIFIED.

 Robert N. Downer and Margaret T. Lainson of Meardon, Sueppel & Downer
P.L.C., Iowa City, for appellants.

 Thomas J. Miller, Attorney General, and Barbara E.B. Galloway,
Assistant Attorney General, for appellee Iowa Department of Human Services.

CARTER, Justice.
 Allan Serovy and Pearl Serovy, the son and daughter-in-law of Mary H.
Serovy, deceased, appeal from an order of the probate court subjecting a
joint-tenancy interest in real estate held by Mary at the time of her death
to a claim of the Iowa Department of Human Services for the cost of medical
assistance provided to Mary as a Medicaid recipient. Allan and Pearl are
the surviving joint owners of the property. They urge that, to the extent
Iowa Code section 249A.5(2) (2003) authorizes the ruling of the probate
court, that statute is an unlawful impairment of the obligation of a
contract between Mary and them, thus violating Article I, Section 10 of the
Constitution of the United States and article I, section 21 of the Iowa
Constitution. The district court rejected that contention, and so do we.
 The property at issue was for many years Mary’s home. It was located
in Solon. Prior to the death of her husband Frank in 1966, she and Frank
owned the property in joint tenancy. Following Frank’s death, Mary owned
the property in fee simple and continued to reside there. In the mid-
1980s, Mary’s health began to deteriorate. Her son, Allan, and daughter-in-
law, Pearl, who lived on a farm located seven miles from Solon, found it
necessary to visit Mary several times each day in order to assist her in
caring for herself.
 Mary hoped to remain in her home as long as possible, and to aid in
accomplishing that wish, she entered into an agreement with Allan and Pearl
whereby they, at their own expense, would build an addition on Mary’s home
in order to provide additional living space for themselves and their
daughter, as well as for Mary. As part of the agreement, they would move
into the home and provide Mary with care and assistance in her daily
living. It was agreed that Mary would execute a warranty deed conveying
her residence to herself, Allan, and Pearl, as joint tenants with right of
survivorship.
 Allan and Pearl did build an addition on Mary’s house at their own
expense, with Allan and his sons doing much of the labor. On March 14,
1988, after the improvements had been substantially completed, Mary
executed the warranty deed transferring title to the property to herself,
Allan, and Pearl as joint tenants. Allan, Pearl, and their daughter moved
into Mary’s home in 1989, at which time some of the remodeling was yet to
be completed. Allan and Pearl cared for Mary in the family home until
1997, when Mary’s condition required her relocation to a nursing home. She
remained in the nursing home until her death on October 11, 1998, during
which time she received medical-assistance benefits under Title XIX of the
Social Security Act.
 On November 30, 1998, Allan filed a petition for probate of Mary’s
will without present administration. On April 17, 2003, the Estate
Recovery Program of Health Management Systems, an agent for the Iowa
Department of Human Services, filed a claim in Mary’s estate for
reimbursement of $28,707.54 plus accruing interest, which was alleged to be
the cost of medical assistance provided to Mary under Medicaid in 1997 and
1998. On April 21, 2003, Ben Chatman, an agent of the Estate Recovery
Program, petitioned for probate of Mary’s will with administration. That
was granted. Chatman was appointed executor.
 On December 11, 2003, a special executor was appointed to review the
Medicaid-reimbursement claim presented by the Estate Recovery Program. The
special executor filed a report recommending that the claim be allowed. On
February 16, 2004, the executor filed a motion seeking an order granting
him authority to sell Mary’s home to satisfy the Medicaid-reimbursement
claim and other obligations of the estate. Allan and Pearl filed a formal
resistance to the executor’s motion, raising the constitutional issues that
they are urging on this appeal.
 The probate court ruled that invoking Iowa Code section 249A.5(2) in
order to subject Mary’s joint-tenancy interest to payment of the Medicaid-
reimbursement claim did not result in an impairment of the obligation of
any contract between Mary and her son and daughter-in-law. The court
concluded that the contract between those parties had been fully performed
prior to the time that Iowa Code section 249A.5(2)(c) and (d) was enacted
in 1994.
 I.  Scope of Review.
 We review the ruling of the probate court de novo because this is
classified as an equitable proceeding pursuant to Iowa Code section 633.33.
We give weight to the fact-findings of the district court, but are not
bound by them. Iowa R. App. P. 6.14(6)(g).

 II.  Impact of Medicaid Recovery Legislation on Mary Serovy’s Joint-
Tenancy Interest.

 A.  The 1994 Medicaid recovery legislation. The controversy now
before the court has arisen as the result of an amendment to Iowa Code
section 249A.5 in 1994, which expanded the category of assets that can be
reached by the Iowa Department of Human Services to satisfy claims filed in
decedents’ estates for the cost of medical-assistance benefits provided to
Medicaid recipients. That legislation contained the following provisions.

 2.  The provision of medical assistance to an individual who is
 fifty-five years of age or older, or who is a resident of a nursing
 facility, . . . who cannot reasonably be expected to be discharged and
 return to the individual’s home, creates a debt due the department
 from the individual’s estate for all medical assistance provided on
 the individual’s behalf, upon the individual’s death.

 . . . .

 c.  For purposes of this section, the estate of a medical
 assistance recipient, surviving spouse, or surviving child includes
 any real property, personal property, or other asset in which the
 recipient, spouse, or child had any legal title or interest at the
 time of the recipient’s, spouse’s, or child’s death, to the extent of
 such interests in jointly held property, retained life estates, and
 interests in trusts.

 d.  For purposes of collection of a debt created by this
 subsection, all assets included in the estate of a medical assistance
 recipient, surviving spouse, or surviving child pursuant to paragraph
 “c” are subject to probate.

1994 Iowa Acts ch. 1120, § 10 (amending Iowa Code § 249A.5).
 We have previously considered the effect of this legislation in In re
Estate of Laughead, 696 N.W.2d 312 (Iowa 2005), and In re Barkema Trust,
690 N.W.2d 50 (Iowa 2004). Our decision in Laughead permitted the
recapture of the value of a life estate for satisfaction of a Medicaid-
reimbursement claim subsequent to the death of the recipient. Our decision
in Barkema allowed a Medicaid recipient’s beneficial interest in a
discretionary support trust to be subjected to a claim for the cost of
Medicaid services, following the death of the recipient, although all
interest in the trust was to pass to a named beneficiary upon the
recipient’s death.
 In discussing the right to reach the assets in the discretionary-
support trust in Barkema, we considered and discussed the situation of
joint-tenancy property. As to such property, we observed:

 [B]esides interests in trusts, the Medicaid recovery statute includes
 jointly held property in the definition of “estate.” Under property
 law, joint tenancy property passes by operation of law to the other
 joint tenant when one joint tenant dies. If “at the time of death”
 meant “at the moment of death,” the jointly held property would
 already have passed to the decedent’s joint tenant at the time when
 the decedent’s “estate” is to be defined for purposes of the Medicaid
 recovery statute. This interpretation of “at the time of death” would
 render the legislature’s inclusion of jointly held property in the
 definition of “estate” meaningless.

Id. at 56.
 Although the discussion of joint-tenancy property in the Barkema case
was dictum, we are satisfied that it sets forth an accurate depiction of
how the Medicaid recovery legislation affects joint-tenancy interests. The
purpose of this legislation was to capture and make available for payment
of Medicaid-reimbursement claims certain interests in property that are not
ordinarily subject to the payment of a decedent’s debts. Because other
types of jointly held property, such as tenancy in common, have always been
available for the payment of claims in probate, the legislature must have
intended the reference to “jointly held property” in section 249A.5(2)(c)
to embrace joint-tenancy interests.
 B.  Whether the Medicaid recovery legislation impairs the obligation
of a contract affecting Allan and Pearl’s interest. Allan and Pearl argue
that the probate court erred in rejecting their constitutional challenge
under the obligation-of-contract clauses of the federal and state
constitutions. The federal constitutional provision on which they rely
provides “[n]o State shall . . . pass any . . . Law impairing the
Obligation of Contracts.” U.S. Const. art. I, § 10. The Iowa
constitutional provision they have invoked provides that “[n]o . . . law
impairing the obligation of contracts shall ever be passed.” Iowa Const.
art. I, § 21.
 In applying these constitutional provisions, we have recognized that
the prohibition therein contained is not absolute and must yield to a
reasonable exercise of the police power for the public good. Adair
Benevolent Soc’y v. State Ins. Div., 489 N.W.2d 1, 5 (Iowa 1992); Amana
Soc’y v. Colony Inn, Inc., 315 N.W.2d 101, 112 (Iowa 1982). In Federal
Land Bank of Omaha v. Arnold, 426 N.W.2d 153 (Iowa 1988), we adopted a
three-step analysis for dealing with constitutional claims alleging
abrogation of the obligation of a contract. That analysis is:

 (1)  [I]f the state law operates as a substantial impairment of a
 contractual relationship, (2) the state must have a significant and
 legitimate public purpose behind the regulation, which (3) adjusts the
 contracting parties’ rights and responsibilities based on reasonable
 conditions appropriate to the public purpose.

Arnold, 426 N.W.2d at 159. In deciding the constitutional challenge lodged
by Allan and Pearl, the probate court went no further than the first step
outlined above and concluded that the legislation has caused no impairment
of a contractual relationship. We agree with that conclusion and uphold
the ruling on that ground.
 The probate court found that the contract between Mary on the one
hand and Allan and Pearl on the other required no more of Mary than her
creation of a property interest in which these three individuals owned the
property that had been Mary’s residence as joint tenants with right of
survivorship. The probate court concluded that this obligation on Mary’s
part was satisfied upon the execution and delivery of a warranty deed
establishing the respective property interests on which the parties had
agreed. The probate court’s interpretation of the agreement appears to us
to be consistent with the evidence concerning the intention of the parties.
 We favor that interpretation of the contract on our de novo review and may
affirm the probate court’s ruling on that basis. Under that interpretation
of the contract, the statute being challenged did not alter what was agreed
to among the parties, it simply affected the subject matter of the
agreement after it had been fully performed.[1]
 Allan and Pearl contend that the agreement was not simply to create a
joint-tenancy interest in the property for each of the three joint tenants
named in the deed, but also included a promise on Mary’s part to have her
joint interest in the property transferred to Allan and Pearl in fee simple
upon her death without impairment or diminution. Even if we accept this
interpretation of the agreement, that will not support a finding that the
obligation of the parties’ agreement has been impaired by the statute. If
Mary had contracted to transfer her joint interest in the property to Allan
and Pearl in fee simple without encumbrance, the Medicaid recovery
legislation did not discharge that obligation. It simply made it
impossible for her to perform the contract, but under circumstances in
which the impossibility would not discharge the obligation. A promisor is
not discharged from a contractual duty on the theory of impossibility if
the promisor brought about the occurrence that has prevented performance.
Associated Grocers of Iowa Coop., Inc. v. West, 297 N.W.2d 103, 108 (Iowa
1980).
 The circumstances that prevented Mary from transferring the agreed
exchange to Allan and Pearl upon her death were of her own making as a
result of her applying for and receiving Medicaid benefits subsequent to
the enactment of section 249A.5(2)(c) and (d). The situation is the same
as if a judgment creditor had levied on and sold her joint interest in the
property during her lifetime. Consequently, even if the agreement was as
it has been urged to be by Allan and Pearl, they have a breach-of-contract
claim against Mary, the unimpaired obligation of which survived her death,
pursuant to Iowa Code section 611.20. See Jackson Sawmill Co. v. United
States, 580 F.2d 302, 311-12 (8th Cir. 1978) (legislation diluting city’s
ability to retire revenue bonds resulted in city’s breach of contract for
acting pursuant to the legislation, but did not impair the obligation of
contract in violation of the constitution).
 III.  Payment of Costs of Administration and Fees From Interest in
Property Subjected to Probate Under Section 249A.5(2)(d).

 In addition to allowing the Estate Recovery Program’s claim for
Medicaid reimbursement to be satisfied in whole or in part from Mary’s
interest in the property that she owned jointly with Allan and Pearl, the
district court authorized the payment of costs of administration, including
fees for the personal representative and the special executor from the
funds received from the sale of that interest. Allan and Pearl assert that
this was not authorized because the property interests that are captured by
section 249A.5(2)(c) and (d) may only be used for payment of Medicaid-
reimbursement claims. We disagree. Under subparagraph (d) of the
legislation, the jointly owned interest of the deceased Medicaid recipient
is made part of the estate in probate. As such, it is available for
payment of the costs of administration.

 IV.  The Extent of the Interest Subject to Administration in Probate.

 The probate court’s order clearly identifies the interest that is
subject to administration in probate pursuant to section 249A.5(2)(d) as
Mary’s one-third interest in the subject property. Notwithstanding that
finding on the court’s part, it proceeded to order the sale of the entire
property with the provision that one-third of the proceeds after costs of
sale were to be utilized for the payment of the medical-assistance claim
under Medicaid and the costs of administering the estate. Although this
disposition may have been prompted by the court’s desire to accelerate a
possible future order for partition among the joint owners of the property,
we are convinced that it was beyond the power of the court to order the
sale of Allan and Pearl’s interests in the property at this stage.
 It is axiomatic that a decedent’s personal representative is only
empowered to sell the decedent’s interest in property owned at the time of
death in order to satisfy claims. This rule has been expressed as follows:

 A decedent’s personal representative’s authority to sell real
 property extends only to the decedent’s estate’s interest in the
 property; a personal representative is not empowered to exercise
 dominion over property that was never owned by the decedent or the
 estate. Thus, if the decedent held title to the property as a tenant
 in common, only that interest may be sold.

31 Am. Jur. 2d Executors & Administrators § 739, at 498 (2002). Similarly,
in Green v. Gustafson, 482 N.W.2d 842 (N.D. 1992), the court stated:

 We agree . . . that [the personal representative’s] authority to
 sell the property extended only to Marvin's estate's interest therein,
 which consisted of Marvin's 1/3 interest and the 1/3 interest of
 George’s heirs which was quieted in Marvin's estate in the action to
 quiet title. . . . It is axiomatic that the personal representative
 is not . . . empowered to exercise dominion over property which was
 never owned by either the decedent or the estate.

Green, 482 N.W.2d at 846. We modify the district court’s order so as to
limit the property that may be sold by the personal representative to the
one-third joint interest owned by Mary immediately prior to her death.
 As an alternative to a sale of property to satisfy the Medicaid-
reimbursement claim, the probate court established a buyout figure. In
describing that figure in their argument on appeal, Allan and Pearl suggest
that the figure was the amount of the Medicaid-reimbursement claim plus
accumulated interest. In reading the probate court’s order it appears to
us that the figure was the court’s valuation of Mary’s one-third interest
in the property immediately prior to her death. We are satisfied that any
buyout figure that the Estate Recovery Program can be made to accept in
lieu of a sale of the property must require payment of its claim plus all
accumulated interest. Of course, the parties are free to negotiate an
alternative buyout figure that would avoid the sale of Mary’s interest in
the property.
 We have considered all issues presented and conclude that the orders
of the probate court should be affirmed as modified in our opinion. Costs
on appeal are assessed to Allan and Pearl.
 AFFIRMED AS MODIFIED.
-----------------------
 [1]The situation is not dissimilar from that presented in Laughead,
696 N.W.2d at 317-18, in which we rejected an impairment-of-obligation-of-
contract challenge to the application of section 249A.5(2)(c) to recapture
the value of a life estate established in a deed executed by a deceased
Medicaid recipient during her lifetime.