690 N.W.2d 50 (2004)
In the Matter of the George G. BARKEMA TRUST.
Gayle Torgerson and Dianne Gille, Beneficiaries, Appellants,
v.
Richard G. Barkema, Trustee, and Health Management Systems, Inc., An Agent for Iowa Department of Human Services, Appellees.
No. 03-1836.
Supreme Court of Iowa.
December 10, 2004.
*52 James A. Brewer of Newbrough, Johnston, Brewer, Maddux & Howell, L.L.P., Ames, for appellants.
Thomas J. Miller, Attorney General, and Barbara E.B. Galloway, Assistant Attorney General, for appellees Iowa Department of Human Services and Health Management Systems, Inc.
Gary J. Groves, Webster City, for appellee trustee.
CADY, Justice.
In this appeal, we must decide if the corpus of a support trust is included in the estate of the beneficiary of the trust upon death for purposes of a claim for recovery of Medicaid benefits provided to the trust beneficiary during her lifetime for nursing home care. The district court found the trust was included within the estate. Upon our review, we affirm.

I. Background Facts and Proceedings
George Barkema established a trust in his will. He left one quarter of the residue of his estate to three of his children, Richard, Doris, and Rose, to hold in trust for his fourth child, Lois. His will directed, "If possible, only the income from said share shall be used for Lois, however, if necessary for her proper support and maintenance, then the corpus of said trust may be invaded to the extent said trustees deem necessary." George's will failed to specify what was to become of the remainder of the trust corpus after Lois's death. After George died, his children entered into an agreement providing that in the event of Lois's death, the trust corpus was to be distributed in equal shares to Lois's children, Dianne Gille and Gayle Torgenson. This agreement was filed with the court in 1978.
Years later, Lois began living in a nursing home. In 1998, Richard helped her apply for Title XIX Medicaid to pay for her medical expenses. Between the time when Lois began receiving Medicaid benefits and her death on April 14, 2003, the State Medicaid program paid approximately $55,000 for her care. However, the State never attempted to obtain income *53 payments from the trustee or compel the trustee to invade the corpus for Lois's support during Lois's lifetime.
On June 2, 2003, Richard, as trustee, filed a final report, recommending that the remaining corpus of the trust (approximately $18,000) be distributed to Dianne and Gayle, pursuant to the 1978 agreement between the siblings. On June 25, 2003, Health Management Systems, Inc., on behalf of the Iowa Department of Human Services (hereinafter the Department), filed both a claim in the trust and an objection to the final report. It claimed it was entitled to the remaining corpus of the trust under Iowa Code section 249A.5(2) (2003). On October 8, 2003, the district court granted the Department's claim and ordered Richard to pay to it the remaining corpus of the trust and interest thereon. The district court based its decision on policy reasons and on what it perceived to be George's intent. Dianne and Gayle appeal.

II. Standard of Review
This case was tried by the probate court in equity. See In re Roehlke's Estate, 231 N.W.2d 26, 27 (Iowa 1975) ("A hearing on objections to a fiduciary's final report is an equitable proceeding." (Citations omitted.)); see also Iowa Code § 633.33 (2003) (stating that all matters are tried by the probate court in equity other than will contests, involuntary proceedings to appoint guardians or conservators, and establishment of contested claims). Accordingly, our scope of review is de novo. Iowa R.App. P. 6.4.

III. Discussion
Iowa Code section 249A.5(2) provides:
The provision of medical assistance to an individual who is fifty-five years of age or older, or who is a resident of a nursing facility, intermediate care facility for persons with mental retardation, or mental health institute, who cannot reasonably be expected to be discharged and return to the individual's home, creates a debt due the department from the individual's estate for all medical assistance provided on the individual's behalf, upon the individual's death.
Iowa Code § 249A.5(2) (2003). Thus, the Medicaid benefits provided by the Department to Lois created a $55,000 debt due to the Department upon her death. See id. This debt is payable from Lois's "estate," which is defined as
any real property, personal property, or other asset in which [she] ... had any legal title or interest at the time of [her] death, to the extent of such interests, including but not limited to interests in jointly held property, retained life estates, and interests in trusts.

Id. § 249A.5(2)(c) (emphasis added).
The Department argues the $18,000 remaining corpus of the trust is an "interest in [a] trust[]," id., and is part of Lois's estate, from which it can collect its $55,000 debt. Dianne and Gayle, however, contend that the trust terminated upon Lois's death and that she therefore had no interest in the trust "at the time of her death." See id.
Our first task is to classify the trust at issue. Because the corpus of the trust could only be invaded "if necessary for [Lois's] proper support and maintenance," the corpus of the trust was held in a form of support trust. See Austin Wakeman Scott, Abridgement of the Law of Trusts § 154 (1960) [hereinafter Scott on Trusts] (defining a support trust as one in which the trustee is directed to distribute so much "as is necessary for the education or support of the beneficiary"); accord Strojek v. Hardin County Bd. of Supervisors, *54 602 N.W.2d 566, 570 (Iowa Ct.App.1999) ("The terms of a support trust require the trustee to pay or apply so much of the trust's income or principal as necessary for the beneficiary's care or education." (Citation omitted.)). There are two types of support trusts: (1) pure support trusts, and (2) discretionary support trusts. See George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 229 (2d ed.1993) [hereinafter Bogert on Trusts]; see also Strojek, 602 N.W.2d at 570; Smith v. Smith, 246 Neb. 193, 517 N.W.2d 394, 398 (1994); Evelyn Ginsburg Abranavel, Discretionary Support Trusts, 69 Iowa L.Rev. 273, 278-80 (1983) [hereinafter Abranavel].
A settlor creates a pure support trust "[i]f a trustee is directed to pay or apply trust income or principal for the benefit of a named person, but only to the extent necessary to support him, and only when the disbursements will accomplish support." Bogert on Trusts § 229 (emphasis added). In contrast, a settlor creates a discretionary support trust if "the stated purpose of the trust is to furnish the beneficiary with support, and the trustee is directed to pay to the beneficiary whatever amount of trust income [or principal] the trustee deems necessary for his support." Bogert on Trusts § 229; see also Smith, 517 N.W.2d at 398 (describing a discretionary support trust as a hybrid of a pure support trust and a pure discretionary trust). Generally, if the trust is a discretionary support trust,
the beneficiary has a right that the trustee pay him the amount which in the exercise of reasonable discretion is needed for his support ...; and the beneficiary can transfer this interest or his creditors may reach it, unless it is protected by a spendthrift clause.
Bogert on Trusts § 229; see also Bureau of Support v. Kreitzer, 16 Ohio St.2d 147, 243 N.E.2d 83, 86 (1968) (stating that "the words `care, comfort, maintenance and general well-being' are to be deemed an enforceable standard of a fiduciary's conduct to the extent of providing minimal support for a destitute cestui que trust" and that the state, as a creditor having provided support to the beneficiary, "may be considered to stand in [her] place to pursue whatever right, claim or remedy she may have, including such as she may have as a destitute cestui que trust"); Scott on Trusts § 187 (stating that although a trustee has discretion whether to make distributions, "if he is directed to pay as much of the income and principal as is necessary for the support of a beneficiary, he can be compelled to pay at least the minimum amount which in the opinion of a reasonable man would be necessary"); Lawrence A. Frolik, Discretionary Support Trusts for a Disabled Beneficiary: A Solution or a Trap for the Unwary?, 46 U. Pitt. L.Rev. 335, 342 (1985) (explaining that when a trust is a discretionary support trust, "the trustee can be required to distribute sufficient income to the beneficiary to provide at least a minimum level of support").
The language used by George Barkema created a discretionary support trust. The trust agreement contained a support provision and provided directions for the trustee to use the trust corpus if necessary for Lois's support and maintenance. By using the words "to the extent said trustees deem necessary," it gave the trustees some discretion as to whether to invade the corpus, see Bohac v. Graham, 424 N.W.2d 144, 146 n. 3 (N.D.1988) (finding a discretionary support trust when the trust allowed the trustee to invade the corpus as he "may deem necessary" for the beneficiary's support; stating that "inclusion of the support language suggests an enforceable standard requiring the trustee to provide a minimum level of support *55 to the beneficiary" (citations omitted)).
Having determined that the trust at issue was a discretionary support trust, we must next determine whether Lois's interest in the discretionary support trust is the kind of interest encompassed by section 249A.5(2)(c). In construing a statute,
[o]ur goal is to determine the intent of the law, gleaned generally from the statutory language. We also consider the statute's "subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations."
Cox v. State, 686 N.W.2d 209, 213 (Iowa 2004) (citations omitted). Thus, we begin by examining the statutory language.
The phrase "interests in trusts" is not defined in chapter 249A. See Iowa Code ch. 249A. However, the legislature clearly intended to define "estate" broadly, and to include more than legal title, because it defined it to include any "legal title or interest." Id. § 249A.5(2)(c) (emphasis added). It also chose to define "estate" more broadly than the federal Medicaid law. The federal statute provides that "estate" "shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law." 42 U.S.C. § 1396p(b)(4)(A) (2000). However, the federal statute provides that "estate" "may include, at the option of the State ..., any other real and personal property and other assets in which the individual had any legal title or interest at the time of death." Id. § 1396p(b)(4)(B). It appears our legislature sought to exercise its option by including interest in addition to legal title.
We next consider the purpose of the Medicaid recovery statute. As one court explained,
Congress mandated that [states participating in the Medicaid program] adopt estate recovery provisions and permitted states to adopt an expansive definition of "estate" to address the increased demand for Medicaid benefits from the nation's aging population. In doing so, Congress intended to give states "wide latitude" in seeking estate recoveries. "Allowing states to recover from the estates of persons who previously received assistance furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services."
Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J.Super 210, 861 A.2d 138, 144 (2004) (citations omitted). The Medicaid program is designed to serve "individuals and families who do not possess adequate funds for basic health services. It is "`the payer of last resort.'"" Strand v. Rasmussen, 648 N.W.2d 95, 106 (Iowa 2002) (citations omitted).
With this in mind, we find that a person has an "interest" in the trust to the extent the assets of a trust are actually available to a trust beneficiary, as that term is used in section 249A.5(2)(c). Cf. Linser v. Office of Attorney Gen., 672 N.W.2d 643, 646 (N.D.2003) ("Under both federal and state law, an asset must be `actually available' to an applicant to be considered a countable asset for determining Medicaid eligibility." (Citation omitted.)). "In order for an asset to be considered an actually available resource, an applicant must have a legal ability to obtain it." Hecker v. Stark County Soc. Serv. Bd., 527 N.W.2d 226, 237 (N.D.1994) (citations omitted). This approach is consistent with the purpose of the recovery *56 statute and the broad language used by our legislature.
The Barkema Trust was a discretionary support trust that contained enough of a distribution standard to create an interest of the beneficiary in the corpus. The trustee was required to pay Lois, during her lifetime, "the amount which in the exercise of reasonable discretion [was] needed for [her] support." Bogert on Trusts § 229. This gave Lois the legal ability to compel the trustee to invade the corpus of the trust and make distributions to her for her support. Consequently, she had an "interest" in the corpus of the trust.[1] We next consider whether the interest was present at the time of her death.
Under the Medicaid recovery statute, the Department can collect its debt from Lois's interest in the trust that she had "at the time of [her] death." Iowa Code § 249A.5(2)(c). Gayle and Dianne argue that "at the time of her death" means "at the precise moment she died." They claim Lois had no interest at the time of her death because the corpus passed to them upon her death by operation of law. We reject this argument for the reason expressed by the Minnesota Court of Appeals: "`[A]t the time of death' must be construed to mean a point in time immediately before death. Any other reading of this phrase would render the estate recovery statute meaningless because upon death, property immediately passes to beneficiaries." In re Estate of Gullberg, 652 N.W.2d 709, 713 n. 1 (Minn.Ct.App.2002) (citation omitted). For example, besides interests in trusts, the Medicaid recovery statute includes jointly held property in the definition of "estate." See Iowa Code § 249A.5(2)(c). Under property law, joint tenancy property passes by operation of law to the other joint tenant when one joint tenant dies. 20 Am.Jur.2d Cotenancy and Joint Ownership § 3 (1995). If "at the time of death" meant "at the moment of death," the jointly held property would already have passed to the decedent's joint tenant at the time when the decedent's "estate" is to be defined for purposes of the Medicaid recovery statute. This interpretation of "at the time of death" would render the legislature's inclusion of jointly held property in the definition of "estate" meaningless. "In interpreting statutes, we will assume that the legislature intends to accomplish some purpose and that the statute was not intended to be a futile exercise." State v. Reed, 596 N.W.2d 514, 515 (Iowa 1999) (citing State v. Horton, 509 N.W.2d 452, 454 (Iowa 1993); Mallory v. Paradise, 173 N.W.2d 264, 268 (Iowa 1969)). Accordingly, we conclude the phrase "at the time of death" means the time immediately before the Medicaid recipient's death.
Thus, the Department acquired Lois's "right that the trustee pay [her] the amount which in the exercise of reasonable discretion is needed for [her] support." Bogert on Trusts § 229. Richard, the trustee of the trust, conceded that the Medicaid benefits the Department provided to Lois were necessary for her support. Accordingly, the Department's $55,000 debt may be collected from the remaining corpus of the trust.

IV. Conclusion
For the foregoing reasons, we affirm the ruling of the district court.
AFFIRMED.
NOTES
[1] We confine our holding to the specific trust agreement at issue in this case and do not consider the extent to which other trusts are included in the definition of "estate" under section 249A.5(2)(c).