**IN THE COURT OF APPEALS OF IOWA**

No. 22-1761
Filed November 21, 2023

**IN THE MATTER OF THE TRUST UNDER THE WILL OF
WILHELM A. YOUNGERMAN,**

**ALVIN M. MARTH,**
　　　　Appellant.
_____

　　　　Appeal from the Iowa District Court for Floyd County, DeDra Schroeder, Judge.

　　　　The estate of Susan Marth appeals an order approving distribution of land under the terms of a testamentary trust. **AFFIRMED.**

　　　　Todd P. Prichard and Caifang Deng of Walk, Prichard, Baresel & Murphy, PC, Charles City, for appellant.

　　　　Patrick G. Vickers of Vickers Law Office, Greene, and Bradley D. Sloter of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles City, for appellees.

　　　　Considered by Bower, C.J., and Buller and Langholz, JJ.

**BOWER, Chief Judge.**

The estate of Susan Marth appeals an order approving distribution of land under the terms of a testamentary trust. Upon our review, we affirm.

## I. *Background Facts and Proceedings*

This dispute concerns opposition to a final report proposing distribution and termination of a trust. Wilhelm Youngerman and Helen Youngerman were married and had four children: David Youngerman, Susan Marth, Judith Brooks, and William Youngerman. Wilhelm died testate in 1985. His will, dated September 25, 1981, created a trust. The will read, in part:

> Article IV: The residue of my estate not effectively disposed of by previous provisions of this Will, I give to the First Security Bank and Trust Company of Charles City, Iowa, as Trustee. This trust (herein referred to as the "Residuary Trust") shall bear my name, and shall be held, administered and disposed of as follows:
>
> A. During the life of my wife, Helen Youngerman, the Corporate Trustee shall pay over to her all of the net income and so much of the principal of the trust as the Corporate Trustee, in its discretion, deems advisable to provide for care, support, maintenance, comfort and welfare.
>
> B. Upon the death of my wife and when all my living children are twenty-five (25) years of age or older, the Corporate Trustee shall divide the "Residuary Trust" together with any property received or receivable from any source into equal shares so as to create one share for each then living child of mine, and one share for the then living children, collectively, of each child of mine who is then deceased. Each share so created shall be held and distributed as follows:
>
>> 1. With respect to each share, if any, created for a child of mine then living the Trustees shall distribute his or her share and the trust as to said child shall terminate.
>>
>> 2. With respect to each share, if any, created for the then living children, collectively, of a child of mine who is then deceased, that share shall be paid over and distributed outright in equal shares to those living grandchildren of mine.
>> . . . .
>
> Article VII: My Executors and my Trustees are empowered to do all things necessary or convenient for the orderly and efficient administration of my estate and the trust hereunder and generally to

have manage and control my said estate and trust as fully as I might, if living, do myself with respect to my own property. Without limiting this general grant of power by the following enumeration, my Executors and my Trustees, or any substitute or successor, shall possess the absolute discretions and powers:

. . . .

M. To make division or distribution in money or kind or part in either at values to be determined by my Executors or Trustees, and the judgment of either in such respects shall be binding upon all interested parties.

As noted in the will, during her lifetime Helen was the sole beneficiary of the trust. Helen died in 2019, survived by three of her four children—David, Susan, and Judith. William predeceased her. Under the terms of the will, the estate was to be split between the surviving children and the issue of any deceased child. At the time of Helen's passing, three assets were held by the trust—a 106-acre parcel of agricultural real estate in Floyd County, a wind farm lease located on the parcel, and a checking account.

Upon Helen's death, the trust, acting through successor trustee David Youngerman, hired a surveyor to divide the parcel of land into four equal shares, one for each of the surviving children and one for William's issue. After the land was divided, a copy of the proposed distribution of the parcel was circulated to all beneficiaries. The final report was filed on July 16, 2021, and amended November 5. The proposed distribution divides the parcel into four parts: Parcels C, D, E, and F. Parcel F is the least desirable of these, as it hosts wind turbines subject to the wind farm lease. The presence of turbines on the land decreases the amount of farmable land and therefore the price. However, all parcels are "surprisingly uniform." The parcels were to be distributed as follows under the

proposed division: Parcel C to the estate of Susan; Parcel D to the issue of William; Parcel E to Judith; and Parcel F to David Youngerman, successor trustee.

An objection to the original final report was filed by Susan Marth on July 28, 2021. An objection to the amended final report was filed on November 18. Susan sought to force a sale of the entire parcel. Susan died before this matter came before the district court, but her objection is maintained by her estate.

The district court found the proposed distribution fell within the permissible bounds of the will. Susan's estate appeals, arguing the distribution is inequitable and subject to Iowa Code chapter 651 (2021) partition rules.

## II.    Standard of Review

A hearing on objections to a trustee's final report is an equitable proceeding. *In re Barkema Tr.*, 690 N.W.2d 50, 53 (Iowa 2004). Our review for the interpretation of a trust agreement tried in equity is de novo. Iowa R. App. P. 6.907; *Barkema*, 690 N.W.2d at 53. Issues of statutory interpretation are reviewed for errors at law. *State v. Watkins*, 914 N.W.2d 827, 837 (Iowa 2018).

## III.    Analysis

*A. Interpreting the Trust.* In interpreting the language of testamentary trusts, the intent of the testator governs. *First Nat'l Bank v. Mackey*, 338 N.W.2d 361, 363 (Iowa 1983); *In re Work Family Tr.*, 151 N.W.2d 490, 492 (Iowa 1967). The meaning given to the language used is to be its usual and ordinary meaning. *In re Est. of Manahan*, 125 N.W.2d 135, 138 (Iowa 1963).

In its September 29, 2022 order, the district court found the terms of the will unambiguous and controlling:

> The terms of the Will and Trust pursuant to the Will are clear. The trustee is given discretion and power as if he is the owner to determine distribution. The distribution made by the successor trustee, pursuant to the terms of the Trust, are binding upon all beneficiaries. The intent of the trustor is controlling. The terms of the Trust are clear. The proposed distribution is fair and equitable and, perhaps, slightly less so to the successor trustee if anyone. The successor trustee has performed his duties in accordance with the directives of the Will and the Trust.

We agree with the district court's analysis. The will is clear regarding the powers of the successor trustee. Article VII, section M is instructive. The successor trustee is granted wide-ranging powers, allowing for distribution of property as though the trustee were the sole owner. Even the enumerated rights within the will do not set the bounds of the trustee's power, as the will specifically states: "*Without limiting this general grant of power by the following enumeration*, my Executors and my Trustees, or any substitute or successor, shall possess the absolute discretions and powers [to] . . . ." (Emphasis added.) The proposed distribution is clearly within the powers envisioned by the will. The successor trustee has divided the property at issue into "surprisingly uniform" portions,[1] allotting himself the least desirable of the four. This is a "division or distribution in money or kind or part in either," as envisioned by Article VII, section M of the will.

Susan's estate argues a division in-kind cannot meet the donor's intent because any division of property cannot create perfectly equal portions. We disagree. Susan's position would prohibit any land from being divided if the portions were different in the slightest. Susan's position stands in direct

---

[1] According to the surveyor.

contradiction to not only the will itself, but fundamental principles of property and inheritance law:

> In the administration of a trust, the discovered intent of the trustor is of controlling importance, and the trust is to be administered in the manner laid down by the grantor. Neither the court, nor a beneficiary, nor the legislature is competent to violate such intent and to substitute its discretion for that of the trustor.

76 Am. Jur. 2d *Trusts* § 317 (2023). Ruling in favor of Susan's estate would require us to overrule the intent of the trustor, imputing an overbroad definition of equitable distribution. We decline to do so. *See generally* Iowa Code § 633A.4214.

*B. Applicability of Chapter 651.* Susan's estate argues Iowa Code chapter 651, which governs partition sales for co-tenants, applies here and requires sale of the property. The district court found chapter 651 did not apply here. We agree.

The definition section of Chapter 651 demonstrates its inapplicability:

> As used in this chapter, unless the context otherwise requires:
> . . . .
> 5. "Heirs property" means real property held in tenancy in common that satisfies all of the following requirements as of the date of the filing of a partition action:
> a. There is not a recorded agreement that binds all of the cotenants that governs the partition of the property.
> b. One or more of the cotenants acquired title from a living or deceased relative.
> c. Any of the following apply:
> (1) Twenty percent or more of the interests are held by cotenants who are relatives.
> (2) Twenty percent or more of the interests are held by an individual who acquired title from a living or deceased relative.
> (3) Twenty percent or more of the cotenants are relatives.

Iowa Code § 651.1. The facts here do not allow application of chapter 651. There is no heirs property here. The trust owns the property in full, so there is no tenancy in common. There is a recorded agreement that binds all parties as to the land at

issue—the will. No parties have yet acquired title to the property. This is a case of distribution under a testamentary trust, not a partition action. Chapter 651 does not apply in this case.

For these reasons, we affirm the ruling of the district court.

**AFFIRMED.**