# IN THE COURT OF APPEALS OF IOWA

No. 15-2142
Filed December 21, 2016

IN THE MATTER OF THE
HELEN R. MACMASTERS TRUST

JOHN WEAVER, LAURIE WEAVER,
and RICHARD WEAVER,
 Appellants,
vs.

CLARENCE RIHA,
 Appellee.
_____

 Appeal from the Iowa District Court for Winneshiek County, John J. Bauercamper, Judge.

 Residual beneficiaries appeal from district court order concluding trustee had abused its discretion in denying income beneficiary's requests for funds. **REVERSED AND REMANDED.**

 Barton L. Seebach of Story, Schoeberi & Seebach, L.L.P., Cresco, for appellants.

 James Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

 Heard by Mullins, P.J., Bower, J., and Scott, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, Senior Judge.**

John Weaver, Laurie Weaver, and Richard Weaver (collectively the Weavers) appeal from a district court order directing the trustee of the Helen R. MacMasters Trust (the Trust), a testamentary discretionary support trust with standards, to distribute funds from the trust principal to provide funds for a lawnmower, car, and handicapped-accessible house for the income beneficiary of the trust, Clarence Riha. The trial court concluded that trustee, Decorah Bank & Trust (DB&T), had abused its discretion in denying Riha's requests for said funds. The Weavers contend on appeal DB&T did not abuse its discretion.

## I. Background Facts & Proceedings

Helen MacMasters wrote her last will and testament on February 15, 2013, shortly before she died on April 11. Her estate was opened on April 12. An inventory of her estate concluded its gross assets totaled approximately $3.4 million.

Riha is MacMasters's brother. She designated him as the beneficiary of a nonprobate asset, an IRA. He was also named as the income beneficiary of the Trust, which was created by MacMasters's will. The will further provided: "In addition to the net income, the trustee shall pay to Clarence Riha such sums from the principal as the trustee deems advisable for Clarence Riha's health, education, support, or maintenance." The residue of the estate or trust was bequeathed to eight individuals, including the Weavers.

On August 30, 2013, before assets were transferred into the Trust, Riha filed an application for possession, in which he requested $331,159.75. Specifically, he requested $5510.50 to purchase a lawnmower, $25,649.25 to

purchase a 2013 Chevrolet Impala, and $300,000 to construct a new, handicapped-accessible home. Riha is confined to a wheelchair because of hip and leg issues. In addition, he has a prosthetic right hand due to a farm accident and another injury rendered him without the full use of his left hand. According to his testimony, his current home is inadequate to his needs. Riha testified his current lawnmower is broken and cannot be repaired. He also testified that a car is necessary to transport him to various appointments, although he is unable to drive.

In September 2013, the executor paid all of the will's special bequests, which amounted to $90,000. The residuary beneficiaries and executor filed objections to Riha's application. Riha withdrew his application on October 4 but filed substantially the same document on October 9. The residuary beneficiaries and executor again objected, asserting, in part, the application was premature because no assets had yet been transferred to the Trust.

In March 2014, the executor filed his final report. Riha objected, in part, because his application had not been granted. In April, DB&T was appointed trustee. In September, the executor and residuary beneficiaries filed a joint motion to dismiss Riha's application in the estate case and transfer it to the trust case. That motion was granted over Riha's resistance. In October, the executor's final report was approved. Shortly thereafter, the residual assets of the estate were distributed to the Trust. In December, the Trust issued a check to Riha for $16,000 and informed him he would begin receiving monthly checks for $2000.

Trial was held on January 22 and 23, and April 15, 2015. On August 10, 2015, the district court issued its ruling in favor of Riha. The court ordered the trustee to make the payments Riha requested in his application. The Weavers now appeal.

## II. Scope and Standard of Review

This case was heard in equity. *See* Iowa Code § 633.33 (2013). As such, our review is de novo. Iowa R. App. P. 6.907.

## III. Trustee Discretion

The language establishing the Trust provides the principal of the Trust could only be invaded if necessary for Riha's support and maintenance. Therefore, the Trust was a support trust. *See In re Barkema Trust*, 690 N.W.2d 50, 53 (Iowa 2004). There are two types of support trusts: (1) pure support trusts and (2) discretionary support trusts. *Id.* at 54.

> A settlor creates a pure support trust if a trustee is directed to pay or apply trust income or principal for the benefit of a named person, but only to the extent necessary to support him, and only when the disbursements will accomplish support. In contrast, a settlor creates a discretionary support trust if the stated purpose of the trust is to furnish the beneficiary with support, and the trustee is directed to pay to the beneficiary whatever amount of trust income or principal the trustee deems necessary for his support.

*Id.* Here, the Trust allows for invasion of the principal for Riha's "health, education, support, and maintenance" as "the trustee deems advisable." This language creates a discretionary support trust. *See id.*; *In re Family Trust of Windus*, No. 07-2006, 2008 WL 3916438, at *2 (Iowa Ct. App. Aug. 27, 2008).

A trustee's discretion is broad. *See* Iowa Code § 633A.4214(1) ("A trustee shall exercise a discretionary power within the bounds of reasonable judgment

and in accordance with applicable fiduciary principles and the terms of the trust."); *see also id.* § 633A.4702 ("In the absence of clear and convincing evidence to the contrary, language in a governing instrument granting a trustee discretion to make or withhold a distribution shall prevail over any language in the governing instrument indicating that the beneficiary may have a legally enforceable right to distributions or indicating a standard for payments or distributions."). "Absent an abuse of discretion, a trustee's exercise of discretion is not subject to control by a court." *Id.* § 633A.4214(2). As a result, "a mere difference of judgment between the court and the trustee[]" is not enough to merit court intervention. *In re Clark*, 154 N.W. 759, 760 (Iowa 1915).

> In determining whether a trustee has abused his or her discretion in exercising or failing to exercise a power, we consider (1) the intended breadth of the trustee's discretion under the trust instrument; (2) the purpose of the trust; (3) the nature of the power at issue; (4) "the existence . . . of an external standard by which the reasonableness of the trustee's conduct can be judged" and the definiteness of that standard; (5) "the motives of the trustee in exercising or refraining from exercising the power"; and (6) whether the trustee has an interest in conflict with the beneficiaries' interest.

*In re Clement Trust*, 679 N.W.2d 31, 39 (Iowa 2004) (citations omitted).

The district court noted the individual trust officer at DB&T who served as trustee, Roger Huinker, did not initially meet with Riha nor request financial information from him. During the gap between trial dates, Huinker did meet with Riha, visit his home, and obtain some financial information. The trustee continued to oppose Riha's requests. The court found the trustee had abused its discretion in denying Riha's requests "in not diligently and timely investigating the needs of the beneficiary and properly considering those needs."

We review the *Clement Trust* factors. *See id.* First, we read the trust instrument to grant the trustee broad discretion by allowing the trustee to promote Riha's health, education, support, or maintenance by invading the principal "as the trustee deems advisable." *See Olsen v. Iowa Bd. of Pharmacy*, No. 14-2164, 2016 WL 2745845, at *2 (Iowa Ct. App. May 11, 2016) (citing with approval district court's characterization of similar language as "broad"). Second, the purpose of the trust is twofold: (1) to benefit Riha in the present, and (2) to benefit the residuary beneficiaries in the future. *See In re Estate of Frye*, No. 13-1170, 2014 WL 3511827, at *11 (Iowa Ct. App. July 16, 2014) (noting the dual purposes of a trust); *In re Residual Trust for Wray*, No. 05-0116, 2005 WL 2990573, at *1 (Iowa Ct. App. Nov. 9, 2005) (concluding residuary beneficiary "had no entitlement to principal or income from the trust during" primary beneficiary's lifetime). Third, the nature of the power at issue is to distribute funds from the principal as the trustee deems advisable. Fourth, there appears to be no external standard to refer to. *See Clement Trust*, 679 N.W.2d at 39.

We consider the trustee's motives fifth. Huinker testified at trial. When asked why he denied the requests, he answered, "My basis was not getting sufficient information at the time to make that decision, that large distribution, at this time, in good faith. I didn't feel this was proper to do at this time." He further testified he had limited contact with Riha, and that he felt a responsibility to Riha and the residuary beneficiaries. From our review of his testimony, we see no dishonesty, improper motive, or failure to exercise judgment in the trustee's decision to deny Riha's requests. *See Ventura Cty. Dep't of Child Support Servs. v. Brown*, 11 Cal. Rptr. 3d 489, 497 (Cal. Ct. App. 2004) ("The court will

not interfere with a trustee's exercise of discretion 'unless the trustee, in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of reasonable judgment.'" (citation omitted)).  As to the sixth factor, there is no contention Huinker has a conflict of interest here, and we find none.

The district court faulted the trustee's failure to investigate Riha's finances, but we decline to put the onus on the trustee to investigate every request that comes before it.  While an income beneficiary's request for a new home is unusual, Riha's request is perhaps a reasonable one, and he has now put forth some justification for it.  However, it would be inefficient to require a trustee to spend resources investigating every proposal, particularly while placing no similar duty on the beneficiary to justify the request.  We find no court that has imposed such a duty.  We do not think it was misguided or an abuse of discretion to request financial information from Riha before making his requested distribution, absent language in the will prohibiting such practice.  *See Carmody v. Betts*, 289 S.W.3d 174, 178 (Ark. Ct. App. 2008) (citing Restatement (Third) of Trusts § 50 cmt. e (Am. Law Inst. 2003)); *Laubner v. J.P. Morgan Chase Bank, N.A.*, 898 N.E.2d 744, 752 (Ill. App. Ct. 2008); *In re G.B. Van Dusen Marital Trust*, 834 N.W.2d 514, 523 (Minn. Ct. App. 2013); *In re Trusts for McDonald*, 953 N.Y.S.2d 751, 753–54 (N.Y. App. Div. 2012).  Nothing in our consideration of the *Clement Trust* factors suggests an abuse of discretion.  We therefore reverse the judgment of the district court and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**